IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GARTH E. GALBRAITH, Plaintiff, | ) ) ) |
| vs | ) ) Civil Action No. 04-870 ) |
| A.G. EDWARDS & SONS, INC., Defendant. | ) ) ) |

O P I N I O N   A N D   O R D E R

MITCHELL, Magistrate Judge:

Presently before the Court is the defendant's motion for summary judgment on its affirmative defenses of waiver and equitable estoppel.[1] For reasons discussed below, the defendant's motion for summary judgment (Docket No. 90) will be denied.

The plaintiff, Garth E. Galbraith, filed a complaint against defendant A.G. Edwards & Sons, Inc. ("A.G. Edwards") in the Court of Common Pleas of Allegheny County, PA, complaining that it was negligent in failing to add his name to a brokerage account owned by its client, Catherine Keeney, as Keeney instructed it to do. The defendant filed a timely notice of removal to this Court, and it is not disputed that the Court has original jurisdiction of this matter pursuant to 28 U.S.C. § 1332.

The complaint sets forth claims against the defendant for negligence, professional

---

1. In an Order dated December 7, 2005, the Court granted the plaintiff's motion to strike portions of the defendant's current motion and supporting brief which deal with the defenses of the economic loss doctrine, payment and the duty of care. Thus, we only assess the defendant's argument that it is entitled to summary judgment by virtue of its affirmative defenses of waiver and equitable estoppel.

negligence, breach of fiduciary duty, and negligent misrepresentation based on the following facts. In mid-October or early November 2001, Catherine Keeney decided to make the plaintiff co-owner of an account she had with A.G. Edwards which contained approximately $940,000 in stocks and other assets. Keeney informed her broker at A.G. Edwards, James Hergenroeder, that she wanted to add the plaintiff as a joint owner on the account, and on November 8, 2001, Hergenroeder sent certain forms to Keeney for her to sign in order to place the plaintiff on her account as a secondary owner. To facilitate the signing of the forms, Hergenroeder indicated on the forms where Keeney and the plaintiff were to sign their names, and on November 15, 2001, the plaintiff personally delivered the signed forms to Hergenroeder which were dated November 14, 2001.

       A.G. Edwards never transferred Keeney's account into joint names. It contends that the forms signed by the plaintiff and Keeney were incomplete and insufficient to transfer Keeney's account to joint ownership. According to James Hergenroeder, on November 12, 2001, he spoke to Keeney by telephone, at which time she advised him not to transfer the account into joint names until they could discuss the matter further. Hergenroeder made several attempts to speak to Keeney about the matter, but she never spoke to him about it prior to her death on December 12, 2001.

       Unaware that he was not made co-owner on Keeney's account, the plaintiff contends that he wrote to A.G. Edwards on January 18, 2002, requesting that the account be transferred into his sole name due to Keeney's death. Thereafter, the plaintiff learned that A.G. Edwards did not transfer Keeney's account into joint names, and it refused to transfer the account into his sole name. Due to the defendant's actions, the plaintiff contends that it breached its duty

of care to him.

On June 14, 2004, A.G. Edwards filed its original answer and affirmative defenses. On November 18, 2005, the defendant amended its answer and affirmative defenses, adding the affirmative defenses of "waiver" and "equitable estoppel". It now moves for summary judgment on its amended defenses. Specifically, A.G. Edwards argues that the plaintiff's claims are barred by the doctrines of waiver and equitable estoppel as a result of the plaintiff's agreement to dismiss it with prejudice from a prior Estate Proceeding brought by the Estate of Catherine Keeney to collect Estate assets.

The record shows that on or about August 5, 2002, PNC Bank, as Executor of the Estate of Catherine Keeney, filed a Petition for Recovery of Assets naming A.G. Edwards and Garth Galbraith, among others, as respondents in the Court of Common Pleas of Allegheny County, Orphans' Court Division (the "Orphans' Court Action").[2] In its Petition in the Orphans' Court Action, PNC Bank asserted that Garth Galbraith claimed ownership of Keeney's account at A.G. Edwards, because prior to her death, he attempted to change her account into a joint account with him as co-owner; that A.G. Edwards never changed Keeney's account into joint names, as it believed it had incomplete and insufficient authorization to make such a change; and that due to Mr. Galbraith's claim, Keeney's account was placed on administrative hold on April 12, 2002. In its Petition, PNC Bank sought a citation from the Orphans' Court, directing A.G. Edwards and Garth Galbraith to show cause why A.G. Edwards should not pay all assets in Keeney's brokerage account to it, free of any claim of Mr. Galbraith.

---

2.   See, defendant's Appendix of Exhibits in support of its current motion at Exhibit 1.

In response to the Petition, Garth Galbraith stated that he became the sole owner of Keeney's account upon her death, as the account should have been transferred to joint names during her lifetime.[3] In A.G. Edwards' answer to the Petition, it offered to distribute the funds in Keeney's account to PNC Bank or the Court, subject to deductions for its costs and expenses.[4]

On October 9, 2002, all parties to the Orphans' Court Action agreed to dismiss any claims against A.G. Edwards in that proceeding in exchange for it paying the funds from Keeney's account into escrow.[5] In pertinent part, the October 9, 2002 stipulation of dismissal in the Orphans' Court Action provided:

> Any claims against A.G. Edwards in the above-captioned proceeding are discontinued and all parties voluntarily dismiss with prejudice A.G. Edwards from the above-captioned proceeding.

Garth Galbraith avers that he had asserted no claim against A.G. Edwards when he executed the October 9, 2002 stipulation of dismissal, and that the only claims brought against it in that proceeding were those asserted by PNC Bank as Executor of Keeney's Estate. It is true that in Galbraith's response to PNC Bank's Petition, he did not raise any claims pertaining to A.G. Edwards' alleged negligence or breach of fiduciary duty in its handling of Keeney's account, even though Galbraith learned from the Petition that A.G. Edwards had not changed Keeney's account into joint names as he and Keeney instructed it. In responding to the Petition, Galbraith maintained that he had become a joint owner of Keeney's account in accordance with

---

3.   Id. at Exhibit 2.

4.   Id. at Exhibit 3.

5.   Id. at Exhibit 5.

her expressed wishes, and he became the sole owner of the account upon her death.

Following A.G. Edwards' dismissal from the Orphans' Court Action, Garth Galbraith continued to assert his right to the funds from Keeney's account. For instance, in his pretrial statement filed in the Orphans' Court Action, Mr. Galbraith stated:

> ... In November, 2001, Ms. Keeney signed all the necessary forms ... needed to make Mr. Galbraith a joint owner of [her A.G. Edwards' account]. She also had discussions with her broker in which she acknowledged that she wanted Mr. Galbraith put on the account.
>
> A.G. Edwards, however, failed to complete all the paperwork needed to transfer the account into joint ownership prior to Ms. Keeney's death...
>
> ... Moreover, as will be established by expert testimony in this case, A.G. Edwards had no valid basis for failing to effect the requested ownership in a timely manner...[6]

A.G. Edwards argues that its alleged negligence in failing to make Mr. Galbraith co-owner of Keeney's account was directly at issue in the Orphans' Court Action; that nonetheless, Galbraith agreed to dismiss it with prejudice from that action in exchange for A.G. Edwards paying the funds from Keeney's account into escrow, so Galbraith and others could make claims to those funds; and that it relied to its detriment on his actions.

The in-house attorney for A.G. Edwards in the Orphans' Court Action, Matthew Salamon, has submitted an affidavit, stating that he would not have authorized the payment of funds in Keeney's account to PNC Bank in accordance with the stipulation of dismissal of A.G. Edwards in the Orphans' Court Action, had Garth Galbraith advised him that he intended to

---

6.  Id. at Exhibit 8.

pursue a separate claim against A.G. Edwards.[7] In his affidavit, Matthew Salamon avers that he believed and still believes that A.G. Edwards' dismissal with prejudice in the Orphans' Court Action resolved any and all claims against A.G. Edwards associated with Keeney's account.[8]

Similarly, A.G. Edwards' Vice President of Investments and Branch Manager of its Greensburg, PA branch, Robert Moffett, Jr., has submitted an affidavit, asserting that he was the person who released the funds from Keeney's account to be paid to PNC Bank to be held in escrow; that he approved the release of those funds based on Garth Galbraith's agreement to dismiss A.G. Edwards with prejudice from the Orphans' Court Action; that he would not have released those funds, had he been advised that Mr. Galbraith intended to pursue a separate claim against A.G. Edwards; and that he believed and still believes that A.G. Edwards' dismissal with prejudice in the Orphans' Court Action resolved any and all claims against it associated with Keeney's account.[9]

The Orphans' Court never decided the issue of whether Garth Galbraith was entitled to the funds from Keeney's A.G. Edwards' account. That is because on May 2, 2003, the remaining parties to the Orphans' Court Action executed a settlement agreement, whereby Mr. Galbraith relinquished his claims to the funds from the A.G. Edwards' account, and those funds

---

7. See, affidavit of Matthew Salamon at ¶ 7 (at Exhibit 6 to the defendant's Appendix of Exhibits).

8. Id. at ¶ 5.

9. See, affidavit of Robert Moffett, Jr. at ¶¶ 2, 3, 5 and 6 (at Exhibit 7 to the defendant's Appendix of Exhibits).

were turned over to Keeney's Estate and distributed in accordance with her will.[10]  As part of the settlement agreement executed on May 2, 2003, Garth Galbraith retained certain assets he acquired from Ms. Keeney; he also expressed his intent to initiate future legal proceedings against A.G. Edwards in connection with its handling of Keeney's account.  As noted above, however, several months before Galbraith executed the May 2, 2003 settlement agreement, he and all other parties to the Orphans' Court Action had dismissed A.G. Edwards with prejudice, at which time no party, including Galbraith, expressed an intent to pursue future claims against it.

        A.G. Edwards asserts that the plaintiff's claims against it are barred by the doctrines of waiver and equitable estoppel.  In support of its position, A.G. Edwards argues that since its complained-of acts were directly at issue in the Orphans' Court Action and would have been resolved there, and as Galbraith dismissed all claims against it with prejudice in that matter in exchange for it turning over the funds in Keeney's account to be held in escrow, Galbraith has waived any claims he may have against it relating to Keeney's account.  In addition, A.G. Edwards avers that it detrimentally relied on Galbraith dismissing it from the Orphans' Court Action when it turned over the funds in Keeney's account to be held in escrow, such that Galbraith should be equitably estopped from raising his claims in this case.

        In determining if A.G. Edwards is entitled to summary judgment on these issues, we are mindful that summary judgment is appropriate if no genuine issue of material fact is in dispute, and the movant is entitled to judgment as a matter of law.  F.R.Civ.P. 56(c); Biener v. Calio, 361 F.3d 206, 210 (3d Cir. 2004).

---

10.   See, defendant's Appendix of Exhibits at Exhibit 10.

Under Pennsylvania law, a waiver "is the act of *intentionally* relinquishing or abandoning some known right, claim or privilege." Brown v. City of Pittsburgh, 186 A.2d 399, 401 (Pa. 1962) (emphasis in original). "To constitute a waiver of legal right, there must be a clear, unequivocal and decisive act of the party with knowledge of such right and an evident purpose to surrender it." Id. While "intent is normally a question for the trier of facts, waiver can be determined as a matter of law, where only one reasonable conclusion can be drawn from the undisputed facts." Linda Coal & Supply Co. v. Tasa Coal Co., 204 A.2d 451, 454 (Pa. 1964).

A waiver may be expressed or implied. Brown, supra, 186 A.2d at 401; Prusky v. Phoenix Life Ins. Co., 2005 WL 1754948; *16 (E.D.Pa., July 26, 2005). In Brown, the Pennsylvania Supreme Court stated:

> In the absence of an express agreement a waiver will not be presumed or implied contrary to the intention of the party whose rights would be injuriously affected thereby, unless by his conduct the opposite party has been misled, *to his prejudice*, into the honest belief that such waiver was intended or consented to.

186 A.2d at 401 (emphasis in original). Here, A.G. Edwards argues that Mr. Galbraith expressly waived his claims against it in the Orphans' Court Action by agreeing to dismiss it with prejudice per the parties' stipulation of dismissal dated October 9, 2002. As recited above, the October 9, 2002 stipulation of dismissal in the Orphans' Court Action provided:

> Any claims against A.G. Edwards in the above-captioned proceeding are discontinued and all parties voluntarily dismiss with prejudice A.G. Edwards from the above-captioned proceeding.

"[O]rdinarily the question of waiver is a question of fact for a jury"; however, "where the only evidence as to waiver is a writing, its construction and interpretation and

whether or not it constitutes a waiver is a question of law for the court." Hanover Const. Co. to Use of Ede v. Fehr, 139 A.2d 656, 658 (Pa. 1958). In opposing summary judgment on this issue, the plaintiff argues that he had not asserted any claims against A.G. Edwards when he executed the stipulation of dismissal; that he did not expressly abandon his right to initiate future legal proceedings against A.G. Edwards relating to Keeney's account, and the stipulation of dismissal contains no language releasing future claims which the parties may have; and that since the stipulation of dismissal was drafted by counsel for A.G. Edwards[11], any ambiguity in the language of the stipulation should be construed against A.G. Edwards which drafted it.

In reviewing the aforesaid language of the stipulation of dismissal, it is telling that the clause twice refers to the phrase "above-captioned proceeding", while making no reference to future claims or proceedings. The clause first specifies that "[a]ny claims against A.G. Edwards in the above-captioned proceeding are discontinued"; it then provides that "all parties voluntarily dismiss with prejudice A.G. Edwards from the above-captioned proceeding." Clearly, the clause contains no language releasing A.G. Edwards from any future claims or liability pertaining to Keeney's account, even though it was drafted by A.G. Edwards. In construing the clear language of the stipulation of dismissal, we cannot say as matter of law that Mr. Galbraith expressly waived his claims against A.G. Edwards or released it from future liability.[12]

A.G. Edwards argues that to the extent the plaintiff's voluntary dismissal of it in

---

11. See, deposition of Keith Whitson at p. 42 (attached as Exhibit F to the plaintiff's exhibits in opposition to the defendant's current motion).

12. Having drafted the stipulation, A.G. Edwards must bear the full responsibility for narrowly crafting the language to apply to the "above-captioned proceeding" (i.e., the Orphans' Court proceeding), rather than broadly encompassing any and all future claims against it.

the Orphans' Court Action does not constitute an express waiver of his claims against it, it constitutes an implied waiver. As discussed above, the law of Pennsylvania provides that an implied waiver applies in situations where "the person claiming the waiver ... show[s] that he was misled and prejudiced thereby." Brown, 186 A.2d at 401; Prusky, supra, 2005 WL 1754948, * 16.

   We do not believe Garth Galbraith misled A.G. Edwards in this instance. As noted above, Galbraith asserted no claim against A.G. Edwards in the Orphans' Court Action, but rather asserted his interest in Keeney's account against the Estate. Further, Galbraith signed no release absolving A.G. Edwards from future liability in its handling of Keeney's account. Instead, Galbraith expressly reserved his right to initiate future claims against A.G. Edwards in the May 2, 2003 settlement agreement in the Orphans' Court Action. Specifically, paragraph 6 of the settlement agreement provides in pertinent part: "Mr. Galbraith has expressed his intent to initiate legal proceedings against A.G. Edwards... and/or the employees or representatives of A.G. Edwards in connection with their handling of the A.G. Edwards Account". The May 2, 2003 settlement agreement was hand-delivered to counsel for A.G. Edwards[13], who did not object to its terms.

   A.G. Edwards asserts that it would not have paid the funds from Keeney's account into escrow in the Orphans' Court Action had Galbraith informed it that he intended to pursue a separate claim against it.[14] However, Galbraith made no misrepresentation to A.G. Edwards in this regard, and he was not obligated to apprise it of his future litigation plans. As represented by

---

13. See, defendant's Appendix of Exhibits at Exhibit 10.
14. See, affidavit of Matthew Salamon at ¶ 7 and affidavit of Robert Moffett, Jr. at ¶¶ 2, 5, 6.

counsel for Garth Galbraith, any factual basis for any claim against A.G. Edwards which was cited in Galbraith's pretrial statement in the Orphans' Court Action was developed during the course of discovery in that proceeding, which took place after the entry of the October 9, 2002 stipulation of dismissal.[15]  Based on the facts recited above, the doctrine of waiver does not bar the plaintiff's claims.

Likewise, the doctrine of equitable estoppel does not preclude the plaintiff from pursuing his claims in this case.  Equitable estoppel is a doctrine sounding in equity, which "acts to preclude one from doing an act differently than the manner in which another was induced by word or deed to expect."  Zitelli v. Dermatology Education and Research Foundation, 633 A.2d 134, 139 (Pa. 1993).  In Zitelli, the Court explained:

> [Equitable Estoppel] arises when one by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts.

Id.  "There are two essential elements to estoppel: inducement and reliance.  The inducement may be words or conduct and the acts that are induced may be by commission or forbearance provided that a change in condition results causing disadvantage to the one induced."  Id.

Stated differently, "equitable estoppel recognizes that an informal promise implied by one's words, deeds or representations which leads another to rely justifiably thereon to his own injury or detriment may be enforced in equity."  Kreutzer v. Monterey County Herald Co., 747 A.2d 358, 361 (Pa. 2000).  Here, by stipulation of dismissal dated October 9, 2002, any claims

---

15.   See, plaintiff's counter-statement of material facts at ¶ 19.

against A.G. Edwards in the Orphans' Court Action were discontinued, and it was voluntarily dismissed with prejudice from that proceeding. In accordance with the stipulation of dismissal, A.G. Edwards turned over the funds from Keeney's account (less its costs and expenses associated with the Estate proceeding) to PNC Bank to be held in escrow.

Significantly, A.G. Edwards has failed to show that it detrimentally relied on the plaintiff's actions in relinquishing control of the funds in Keeney's account. Indeed, A.G. Edwards admits that as a matter of law, Keeney's Estate was entitled to the funds from her account upon her death.[16] In relevant part, 20 Pa.C.S.A. § 6407 provides:

> On death of a sole owner or the last to die of all multiple owners, ownership of securities registered in beneficiary form passes to the beneficiary or beneficiaries who survive all owners... If no beneficiary survives the death of all owners, the security belongs to the estate of the deceased sole owner or the estate of the last to die of all multiple owners.

In its motion for summary judgment, A.G. Edwards argued that it had a lien and security interest in the funds in Keeney's account, which it turned over to PNC Bank to its detriment. However, A.G. Edwards now admits that it had no lien or security interest in the funds from Keeney's account based on its account documents with her.[17] Having failed to show that Garth Galbraith misled it, or that it relied to its detriment on his actions, A.G. Edwards has not shown that Galbraith should be equitably estopped from asserting his claims.

---

16. See, deposition of Keith Whitson at p. 16 (attached as Exhibit F to the plaintiff's exhibits in opposition to the defendant's present motion), and deposition of Robert Moffett at p. 19 (attached as Exhibit E to the plaintiff's exhibits).

17. See, deposition of Keith Whitson at pp. 20-25 (attached as Exhibit 18 to the defendant's reply brief).

Therefore, for the reasons discussed above, the defendant is not entitled to summary judgment on its affirmative defenses of waiver and equitable estoppel.

An appropriate Order will be entered.

<u>O   R   D   E   R</u>

AND NOW, this 22nd day of December, 2005, for the reasons set forth in the Court's Opinion and Order,

IT IS ORDERED that the defendant's motion for summary judgment (Docket No. 90) is denied.

<u>s/ ROBERT C. MITCHELL</u>
United States Magistrate Judge